■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALLAN GRIFFITHS, Appellant. [669 NYS2d 603] —Appeal by the

defendant from a judgment of the Supreme Court, Queens County (Braun, J.), rendered May 31, 1995, convicting him of robbery in the first degree (two counts), criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree, and criminal possession of a weapon in the fourth degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress statements made to law enforcement officials.

Ordered that the judgment is reversed, on the law, and a new trial is ordered.

At the trial, the court, over the defense counsel's objections, permitted the People to elicit detailed testimony concerning the heavy-armored response to the apartment where the defendant was arrested, as well as repeated references to a "hostage situation" which never, in fact, existed. While some testimony as to the manner of the defendant's arrest was proper, since a gun seized incident to that arrest formed the basis of two counts in the indictment, the testimony went well beyond permissible limits (*see generally, People v Scarola,* 71 NY2d 769, 797). These errors were exacerbated by the trial court's restrictions on the defendant's efforts to establish that there was, in fact, no hostage situation.

The People's first witness, Police Officer Richard Greene, described the "Apprehension Tactical Team" which arrested the defendant, and noted that "[w]e do high risk entries" into apartments where there is an "armed perpetrator or hostages". He further noted that unlike the "average street cop" who wears a "level-two" bulletproof vest, "which is for just small handguns", his team wore the level three 40-pound "real heavy vest", and "ballistics helmets", which members of the military wear. In addition, certain members of the team carried a "ballistic body bunker" three-feet tall by two-feet wide, to protect the upper body and head from being shot, while others carried "Heckle [sic] and Koch, H&K MP5" machine guns. The trial court, in overruling the defense counsel's objections to this testimony, noted that this testimony could make the defendant "appear to be someone they regarded as a desperado, in trying to apprehend him, [but] it is for jury to draw whatever reasonable inferences they can draw from whatever is presented". Thereafter, three additional People's witnesses were permitted, over objection, to testify in a similar manner.

It was error for the People to call a witness in their behalf solely for the purpose of impeaching her with her prior inconsistent Grand Jury testimony (*see, People v Russ,* 79 NY2d

173; *People v Jones,* 126 AD2d 974; *People v Broadwater,* 116 AD2d 1022; *People v Smith,* 104 AD2d 160). It was also error for the People to impeach another of their own witnesses with her previous statements, since her testimony at trial that she heard a shot, but did not see the shooter, did not affirmatively damage the People's case (*see, People v Hickman,* 75 NY2d 891; *People v Fitzpatrick,* 40 NY2d 44).

Since there must be a new trial, we note that two detectives gave improper testimony which inferentially bolstered the testimony of the informant (*see, People v McDaniel,* 81 NY2d 10, 16; *People v Gordillo,* 191 AD2d 455).

We have considered the defendant's remaining contentions and find them to be without merit. Thompson, J. P., Joy, Goldstein and Luciano, JJ., concur.