[952 NE2d 1022, 929 NYS2d 30]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EMAR ABRAMS, Appellant.

Argued May 2, 2011; decided June 14, 2011

### APPEARANCES OF COUNSEL

*Emar Abrams*, pro se, and *Mitchell S. Kessler*, Cohoes, for Emar Abrams, appellant.

*Anna E. Remet, Special Prosecutor*, Kingston, for respondent.

### OPINION OF THE COURT

MEMORANDUM.

The order of the Appellate Division should be affirmed.

On October 12, 2006, Tiffany Abrams and her two young sons were in their Ulster County apartment along with defendant, Emar Abrams, the boys' father and Tiffany's estranged husband. Defendant did not live at the apartment, but was supposed to watch the children that day while Tiffany was at work. Tiffany and defendant were "arguing back and forth" when she went into her bedroom to try to fix the "frozen" computer for her older son before she left for work. She sat down in front of the computer monitor as defendant continued to badger her. A shot was fired from behind Tiffany, and a bullet whizzed past her ear, shattering the monitor's screen and lodging in the bedroom wall. Defendant fled, and Tiffany, with her two children in tow, ran to her sister's apartment. Tiffany appeared upset and disheveled to her sister; tiny glass shards were visible in her arm. She told her sister that defendant had shot at her. Tiffany's sister called the police.

Meanwhile, defendant took a taxi to the apartment complex where his girlfriend, Tanisha Torres, resided. After he arrived at the apartment, defendant disappeared into Tanisha's bedroom and reappeared with a lockbox that she kept there. Defendant gave the lockbox to Tanisha and asked her to "remove" it. Tanisha decided that the safest place for the lockbox would be her parents' house, so she put the lockbox in a bag and called her mother to come pick her up and take her there. Before hiding the lockbox in the toolshed in her parents' backyard, Torres looked inside the box and saw a handgun. Tanisha's mother drove Tanisha back to her apartment, where defendant had remained.

Tanisha's mother called her husband, Tanisha's father, who left work to go home and look in the toolshed. He saw that things were "out of place" in the shed—to which apparently only he and Tanisha had a key—discovered the lockbox, pried it open with a crowbar, saw the gun and closed the lockbox back up. Not wanting a gun in the shed, Tanisha's father tossed the lockbox into the woods, and then told the police where to find the gun. Ballistics testing subsequently determined that the bullet lodged in Tiffany's bedroom wall was fired from the gun stashed away in the lockbox.

Police set up a barricade at Tanisha's apartment complex, and defendant was eventually persuaded to surrender. He was arrested and charged with weapon possession crimes, reckless endangerment, menacing and endangering the welfare of a child. Before trial, the newly-elected district attorney, who had

previously represented defendant "either on the charges pending before the court or on other charges," asked County Court to appoint a special prosecutor. County Court granted the motion.

The special prosecutor learned that Tiffany was unwilling to testify and intended to invoke her constitutional privilege against self-incrimination. Just before opening statements, he disclosed the terms of an agreement pursuant to which Tiffany had been granted immunity from prosecution for perjury in the event her trial testimony conflicted with her grand jury testimony. The special prosecutor said that he had granted Tiffany immunity after consulting with the district attorney to see if, as special prosecutor, he was authorized to immunize a witness from prosecution, and obtaining the district attorney's "permission." Defendant objected on the ground of the district attorney's conflict of interest. The trial judge approved the grant of immunity.

The jury convicted defendant of all the counts of the original indictment, except menacing, which was dismissed by the special prosecutor at trial. The trial judge sentenced defendant, a prior felony offender, to determinate prison terms that aggregated to 13½ years, to be followed by five years of postrelease supervision. Defendant appealed, and the Appellate Division affirmed (73 AD3d 1225 [3d Dept 2010]). A Judge of this Court granted defendant leave to appeal (15 NY3d 746 [2010]), and we now also affirm.

A prosecutor possesses discretion to decide when to immunize a witness from prosecution, and County Court is a competent authority to confer immunity when expressly requested by the district attorney to do so (CPL 50.30). Further, section 701 (4) of the County Law declares that special district attorneys (i.e., special prosecutors) "shall possess the powers and discharge the duties of the district attorney during the period for which he or she shall be appointed."

In seeking immunity for Tiffany, the special prosecutor therefore acted within his discretionary authority. He conferred with the district attorney merely to confirm that he was empowered to grant immunity to a witness, and that the district attorney would honor the grant. In short, the district attorney's "permission" did not vest the special prosecutor with any more authority than he already enjoyed. As the Appellate Division observed, the record does not suggest that the district attorney shared confidential information with the special prosecutor, or

that he prompted or influenced the special prosecutor's decision to immunize Tiffany from prosecution. "To warrant vacatur of the conviction, [a] defendant must establish actual prejudice or a substantial risk of an abused confidence" (*People v English*, 88 NY2d 30, 34 [1996]), and defendant has not shown either circumstance to be the case here.

We have examined defendant's other claims and consider them to be meritless.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, SMITH, PIGOTT and JONES concur.

Order affirmed in a memorandum.