================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
----------------------------------------------------------------
No. 26
The People &c.,
            Respondent,
         v.
Oliver Berry,
Also Known as Chris Tucker,
            Appellant.

            Erica Horwitz, for appellant.
            Rona I. Kugler, for respondent.

PIGOTT, J.:

        A near collision on July 16, 2002 at the intersection

of Foch Boulevard and Guy R. Brewer Boulevard in Queens, New

York, led to a heated argument between defendant and Korin Bush,

a passenger in a vehicle being driven by Josiah Salley.  The

- 1 -

confrontation lasted for a considerable period of time -- five to ten minutes by some estimates -- before the participants parted and Salley and Bush drove away.

Approximately 90 minutes later, Salley and Bush approached the same intersection from the opposite direction. Bush saw defendant and another man standing by a fence. Bush would later testify that, as the light changed, defendant ran toward their vehicle and fired several shots, shattering the windows and striking Salley. Bullets also pierced the passenger side door. Defendant then ran away, past a playground and into a nearby housing development. Salley died from gunshot wounds.

Detectives, who were nearby working on an unrelated case, heard the gunshots and saw two individuals running from the scene. Although defendant eluded capture, a detective apprehended the other person -- later identified as Kevin Kirven -- and returned him to the scene of the shooting. Bush identified Kirven as the man that had been standing with defendant at the fence before the shooting, but told police Kirven was not the shooter. Kirven was taken to the police precinct, where he gave a signed statement to detectives and was released. Defendant evaded capture for nearly two years. He was finally apprehended on May 5, 2004. At a six-person lineup conducted that afternoon, Bush identified defendant as the shooter.

Defendant was then charged with murder in the second degree, attempted murder in the second degree, and criminal

possession of a weapon in the second and third degrees.  At the
subsequent trial, defendant was found guilty as charged; however,
the Appellate Division reversed the judgment and ordered a new
trial (49 AD3d 888, 889 [2d Dept 2008] [citations omitted]).

At the second trial, Kirven, who had been unavailable
at the first trial, was called by the People.  His testimony is
the focus of a number of rulings that form the basis of this
appeal.

Kirven testified that he and defendant had been
friends, and that he knew defendant to go by the name of "Fuzzy."
Kirven had written the name "Fuzzy" and "Fuzzy's" phone number in
his address book.  When asked if he was at the intersection of
Foch and Guy R. Brewer on the day of the shooting, Kirven invoked
his Fifth Amendment privilege against self-incrimination.  He
continued to invoke that privilege with regard to five additional
questions posed by the prosecutor concerning: whether he had
heard shots; whether he had observed defendant fire any shots;
where he had been standing when he had heard gunfire; whether he
and defendant had conversed prior to the shooting; and what type
of shirt he was wearing on that day.

Once Kirven received immunity concerning questions as
to where he was standing and whether he and defendant had engaged
in a conversation prior to the shooting, he testified that he was
in the park when the shooting had occurred but that he and
defendant had not engaged in any conversation.  As to other

questions, the court directed Kirven to answer and he did so, testifying that he had seen defendant at the park approximately 15 to 20 minutes prior to the shooting,[1] and that he was present at the time but heard only one gunshot.  Because his answers were contrary to what he had told police, the prosecutor sought to impeach Kirven with the statement that he had given shortly after the shooting.  Over defense counsel's objection, the court allowed a redacted version of the statement to be introduced into evidence for impeachment purposes, with a limiting instruction that the statement was admitted not for its truthfulness but for the sole purpose of impeaching Kirven's credibility.

After the defense presented its case, which included the testimony of an expert in the field of eyewitness identification, defendant was convicted of murder in the second degree, attempted murder in the second degree, and criminal possession of a weapon in the second and third degrees.

The Appellate Division affirmed the judgment, rejecting defendant's contention that Kirven's invocation of his Fifth Amendment privilege added "critical weight" to the People's case and that Kirven's testimony deprived him of a fair trial.  The court also held that the trial court properly allowed the People to impeach Kirven with his prior inconsistent statements (110

---

[1]  Days later, after being re-called to the stand, Kirven testified that he did not see defendant at the park on the day of the shooting, contradicting his earlier testimony that defendant was present.

AD3d 1002, 1002 [2d Dept 2013]).

A Judge of this Court granted defendant leave to appeal, and we now affirm.

I.

Defendant first contends that the trial court committed reversible error by allowing the People to "deliberately" call Kirven "solely to elicit a claim of privilege," with Kirven's invocation of the privilege allegedly adding "critical weight" to the People's case.  It is defendant's contention that the People called Kirven in bad faith so that they could question him about topics that they knew would require him to invoke his Fifth Amendment privilege in front of the jury.  The trial court rejected that claim and we conclude that its determination in this regard was proper.

The Fifth Amendment of the United States Constitution directs that no person "shall be compelled in any criminal case to be a witness against himself" (US Const Amend V).  When a witness invokes the Fifth Amendment privilege in front of the jury, "the effect of the powerful but improper inference of what the witness might have said absent the claim of privilege can neither be quantified nor tested by cross-examination, imperiling the defendant's right to a fair trial" (People v Vargas, 86 NY2d 215, 221 [1995], citing People v Pollock, 21 NY2d 206, 212 [1967]; United States v Maloney, 262 F2d 535, 537-538 [2d Cir 1959]; Namet v United States, 373 US 179, 185-186 [1963]).  It is

therefore reversible error for the trial court to permit the prosecutor to deliberately call a witness for the sole purpose of eliciting a claim of privilege (see Pollock, 21 NY2d at 212-213; see also Vargas, 86 NY2d at 221). The critical inquiry is whether the prosecution exploited the witness's invocation of the privilege, either by attempting "to build its case on inferences drawn from the witness's assertion of the privilege" or utilizing those inferences to "unfairly prejudice [the] defendant by adding 'critical weight' to the prosecution's case in a form not subject to cross-examination" (Vargas, 86 NY2d at 221, quoting Namet, 373 US at 186-187).

It is clear that the People did not call Kirven for the sole purpose of eliciting his invocation of the privilege or "in a conscious and flagrant attempt to build its case out of inferences arising from the use of the testimonial privilege" (Namet, 373 US at 186; see Pollock, 21 NY2d at 209-211 [in a case where joint defendants denied killing the victim and claimed their confessions were false and extracted by force, but where each confession specifically referred to one Earl James as an accomplice, it was error for the People to call James for the sole purpose of having him invoke the testimonial privilege, which created in the jurors' mind the inference that James was incriminating not only himself but the joint defendants as well]; Vargas, 86 NY2d at 223-224 [prosecutor's awareness of the witness's intent to invoke testimonial privilege, coupled with

her repeated violations of the court's order not to question the witness on those matters and her summation references to the invocation of the privilege, constituted an improper attempt on the part of the People to build their case on improper inferences that could be drawn from the invocation of the privilege]).

There were other matters, as conceded by the defense, that warranted Kirven being called. Nor did the People utilize Kirven's invocation on summation to raise impermissible inferences that defendant committed the crimes. There is also no indication that the People's motive for calling Kirven was solely to raise inferences of defendant's guilt based on his invocation of the privilege. The People were prepared to, and in fact did, grant immunity to Kirven with regard to specific questions in an effort to provide a clear picture of events leading up to the shooting and its immediate aftermath.[2]

## II.

Defendant next argues that the People's impeachment of Kirven violated CPL 60.35, which modified the common law rule against impeachment of one's own witness by allowing a party who

---

[2] Nor can it be said that Kirven's invocation of the privilege lent "critical weight" to the People's case in a manner not subject to cross-examination (Namet, 373 US at 187). Kirven invoked the testimonial privilege only six times in over 80 pages of transcript. Moreover, on all but one of those occasions, he was either directed to answer by the trial court or was granted immunity in regard to his answers as to the particular questions. Thus, inasmuch as Kirven answered and was subject to cross-examination in those instances, there was no danger of the jury drawing improper inferences.

called the witness to show that the witness has made statements that are inconsistent with his or her trial testimony.  That provision states, as relevant here, that when a witness called by a party "gives testimony upon a material issue of the case which tends to disprove the position of such party, such party may introduce evidence that such witness has previously made . . . a written statement signed by him . . . contradictory to such testimony" (CPL 60.35 [1]).

Evidence of a prior contradictory statement may be received for the limited purpose of impeaching the witness's credibility with respect to his or her testimony, and, upon its receipt of the evidence, the court must instruct the jury that the evidence is for impeachment purposes only and does not constitute evidence in chief (see CPL 60.35 [2]).  The evidence of the prior statement is not admissible, however, if the testimony of the witness "does not tend to disprove the position of the party who called him [or] her and elicited [the contradictory] testimony" (CPL 60.35 [3]).  Thus, before a party may impeach its own witness, the testimony on a "material fact" must "tend[] to disprove the party's position or affirmatively damage[] the party's case" (People v Saez, 69 NY2d 802, 804 [1987] citing CPL 60.35 [1]; People v Fitzpatrick, 40 NY2d 44, 51 [1976] [witness who merely states that he cannot recall events in question does not "tend to disprove" the prosecution's case]).

Here the trial court properly allowed the People to

introduce Kirven's redacted statement for the purpose of impeaching him because portions of his testimony were contrary to what he had told police two years earlier and "affirmatively damaged" the People's case.  Kirven's testimony that he heard only one shot and did not see defendant firing at a car had the possibility of jeopardizing charges of both second degree murder for the death of Salley and attempted murder for shooting at Bush.  Kirven's testimony that he had heard only one shot tended to disprove the People's theory of multiple shots fired at both Salley and Bush, and would have disproved the position that defendant intended to cause the death of both.  In addition, Kirven had previously signed a statement indicating that defendant was the shooter, but at trial stated that he did not see defendant at the scene.  Importantly, the trial court instructed the jury on three separate occasions -- twice during trial and once during its reading of the jury instructions -- that the redacted statement was admitted solely for the purpose of impeaching Kirven's credibility and not for its truthfulness. On this record, it cannot be said that the trial court erred in allowing the People to introduce the redacted statement for its limited purpose of impeachment.

III.

Defendant's final contention is that he was deprived of his right to a fair trial and to present a defense by the trial court's ruling precluding his identification expert from

testifying about the effect of high stress on the accuracy of an identification.

During the trial, defense counsel sought testimony from an identification expert to address, among other things, "weapon focus," the lack of correlation between certainty and accuracy by identifying witnesses, i.e., "witness confidence," and, as relevant here, the effect of a witness undergoing a traumatic or significant event, i.e., "event stress."  The court ruled that defendant's expert could testify relative to weapon focus and witness confidence, but could not testify as to the effect of event stress because, based on its research, that topic was not generally accepted in the scientific community.

Expert testimony that is proffered relative to the reliability of eyewitness identification "is not inadmissible per se," but "the decision whether to admit it rests in the sound discretion of the trial court" (People v Lee, 96 NY2d 157, 160 [2001]).  Such decision should be guided by "whether the proffered expert testimony would aid a lay jury in reaching a verdict" (id. at 162 [internal quotation marks omitted]).  We have acknowledged, however, that

> "where [a] case turns on the accuracy of
> eyewitness identifications and there is
> little or no corroborating evidence
> connecting the defendant to the crime, it is
> an abuse of discretion for the trial court to
> exclude expert testimony on the reliability
> of expert identifications if that testimony
> is (1) relevant to the witness's
> identification of defendant, (2) based on
> principles that are generally accepted within

the relevant scientific community, (3)
proffered by a qualified expert and (4) on a
topic beyond the ken of the average juror"
(People v LeGrand, 8 NY3d 449, 452 [2007]).

Under the circumstances of this case, it cannot be said
that the trial court abused its discretion in not allowing the
defense expert to testify with regard to the effect of stress on
the reliability of witness identification.  The People sought a
ruling at trial concerning the parameters of the defense expert's
testimony.  The defense failed to submit any evidence
demonstrating that its expert's testimony on the topic of event
stress met the reliability concerns of Frye v United States (293
F. 1013 [DC Cir. 1923]).

In any event, the trial court did not wholly preclude
the defense expert from offering any expert testimony concerning
eyewitness identification.  It permitted the expert to testify on
the topic of witness confidence, which we have held is an area
that has been deemed generally acceptable in the relevant
scientific community, namely, correlation between witness
confidence and accuracy of identification (see e.g. People v
Santiago, 17 NY3d 661, 672 [2011]; People v Abney, 13 NY3d 251,
268 [2009]; LeGrand, 8 NY3d at 457-458 [noting that once a
scientific procedure has been deemed reliable, a Frye inquiry
need not be conducted each time such evidence is offered and
courts may take judicial notice of the reliability of the general
procedure]).  The court also permitted the expert to testify
concerning weapon focus without first conducting a Frye hearing

(see Abney, 13 NY3d at 268 [holding that the trial court should have conducted a Frye hearing on the issue of weapon focus]; LeGrand, 8 NY3d at 458 [holding that there was insufficient evidence to confirm that the principles expounded by the defense expert witness on weapon focus were generally accepted by the relevant scientific community]).

Unlike the situations in Santiago, Abney, and LeGrand, where the trial courts precluded all expert testimony concerning the reliability of eyewitness identification, the trial court here made a reasoned determination concerning the kinds of expert testimony that were relevant. The defense in the three aforementioned cases moved in limine for a pre-trial determination concerning what topics the respective experts could render, whereas the defense here made no such motion, leaving it up to the People to request that the court discuss the parameters of the expert's testimony.

Defendant, relying on our holding in Abney, argues that the trial court improperly precluded the event stress testimony without a Frye hearing. Abney, however, is distinguishable. There the victim, in an encounter that this Court deemed "fleeting," was robbed at knifepoint by a man on the subway stairs (Abney, 13 NY3d at 257). The court excluded all of the proposed expert witness testimony, holding that there was "nothing unique about the case" that presented issues that were beyond the ken of the jury (id. at 260). We held that the trial

judge abused his discretion in not allowing the defense expert to testify on the issue of witness confidence, which we acknowledged is generally accepted within the relevant scientific community (see id. at 268). With respect "to the remaining relevant proposed areas of expert testimony," two of which were event stress and weapon focus, we held that the trial court should have held a Frye hearing (id. [emphasis supplied]).

Unlike the situation in Abney, the encounter between Bush and defendant was anything but "fleeting." Bush had the opportunity to observe defendant for five to ten minutes in a confrontation just an hour and a half prior to the shooting. This was not an instance where the witness had never seen the alleged perpetrator before.

We have acknowledged that even when expert testimony is required, the trial court is "obliged to exercise its discretion with regard to the relevance and scope of such expert testimony" and that "not all categories of such testimony are applicable or relevant in every case" (LeGrand, 8 NY3d at 459). The trial court here permitted the expert to testify in two key areas -- witness confidence and weapon focus -- both of which were particularly relevant in this case, where Bush had testified that he had concentrated on defendant's face during the shooting. Moreover, in light of Bush having observed defendant on a prior occasion just 90 minutes prior to the shooting, it cannot be said that the trial court abused its discretion by precluding the

expert's testimony with regard to so-called event stress on the ground that it was not relevant.

Accordingly, the order of the Appellate Division should be affirmed.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed.  Opinion by Judge Pigott.  Chief Judge DiFiore and Judges Rivera, Abdus-Salaam, Stein, Fahey and Garcia concur.


Decided March 29, 2016