■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAVON ELLISON, Appellant. [59 NYS3d 216]—

Appeal from a judgment of the Niagara County Court (Sara Sheldon, J.), rendered August 27, 2015. The judgment convicted defendant, upon a jury verdict, of attempted murder in the second degree, assault in the first degree and criminal possession of a weapon in the second degree.

It is hereby ordered that the judgment so appealed from is affirmed.

Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of attempted murder in the second degree (Penal Law §§ 110.00, 125.25 [1]), assault in the first degree (§ 120.10 [1]), and criminal possession of a weapon in the second degree (§ 265.03 [3]). Contrary to defendant's contention, upon viewing the evidence in the light most favorable to the People, we conclude that the evidence is legally sufficient to establish that he possessed a loaded firearm outside of his home or place of business (*see generally People v Danielson*, 9 NY3d 342, 349 [2007]; *People v Bleakley*, 69 NY2d 490, 495 [1987]). Although no weapon was recovered, the victim's girlfriend testified that she observed the victim standing next to the driver's side of a vehicle that was occupied only by the driver when she heard three or four gun shots and saw the victim holding his abdomen. The victim's girlfriend identified

defendant by name twice in the 911 call she made while driving the victim to the hospital, and the recording of that call was admitted in evidence. Furthermore, another witness testified that, while he and defendant were housed at the same correctional facility, defendant admitted to him that he shot the victim in the abdomen at the location where the victim's girlfriend testified the shooting had occurred. We therefore conclude that there is a valid line of reasoning and permissible inferences to support the conclusion that defendant possessed a loaded firearm outside of his home or place of business (*see generally Bleakley*, 69 NY2d at 495). We reject defendant's further contention that County Court erred in directing that the sentence on that count run consecutively to the concurrent terms of imprisonment imposed on the attempted murder and assault counts. The evidence established that defendant's possession of a loaded firearm outside of his home or place of business was a separate act for sentencing purposes (*see People v Brown*, 21 NY3d 739, 744-745 [2013]; *see also* Penal Law § 70.25 [2]).

Contrary to defendant's further contention, the court properly allowed the People to impeach the credibility of the victim's girlfriend when she testified that she did not see the driver of the vehicle who shot the victim, which contradicted her grand jury testimony and her sworn statement identifying defendant as the shooter. It is well established that "[e]vidence of a prior contradictory statement may be received for the limited purpose of impeaching the witness's credibility with respect to his or her testimony . . . [where, as here], the testimony on a 'material fact' . . . 'tend[s] to disprove the party's position or affirmatively damage[s] the party's case' " (*People v Berry*, 27 NY3d 10, 17 [2016], *rearg dismissed* 28 NY3d 1060 [2016]; *see* CPL 60.35 [1]). We conclude that the testimony of the witness denying that she saw the driver related to a material fact, the identity of the shooter, and affirmatively damaged the People's case (*see Berry*, 27 NY3d at 17-18), particularly because the victim did not testify.

Defendant did not object to the court's failure to give a limiting instruction when the prosecutor impeached the credibility of the witness and thus did not preserve for our review his contention that the court's failure to give a limiting instruction constitutes reversible error (*see* CPL 470.05 [2]). In any event, we conclude that the contention is without merit. CPL 60.35 (2) provides that evidence concerning prior contradictory statements may be used only for the purpose of impeaching the credibility of the witness and does not constitute evidence-in-

chief, and it further provides that, "[u]pon receiving such evidence at a jury trial, the court must so instruct the jury." The court properly charged the jury that the witness's contradictory statements did not constitute evidence-in-chief and that the jury could consider those statements only for the purpose of assessing her credibility, and thus we conclude that the failure to give a limiting instruction at the time her testimony was impeached does not warrant reversal (*see People v Davis*, 112 AD2d 722, 724 [1985], *lv denied* 66 NY2d 918 [1985]).

Finally, the sentence is not unduly harsh or severe.

Whalen, P.J., and DeJoseph, J., concur in the following memorandum.

Whalen, P.J., and DeJoseph, J. (concurring). We concur in the result reached by the majority but respectfully disagree with the conclusion that County Court properly allowed the People to impeach the credibility of their own witness, the victim's girlfriend, using her grand jury testimony and her statement to police. In our view, the witness's testimony at trial that she glanced at the vehicle involved in the shooting but did not see the driver or know who was driving was "merely neutral or unhelpful," rather than affirmatively damaging, to the People's case (*People v Hampton*, 73 AD3d 442, 443 [2010], *lv denied* 16 NY3d 895 [2011]; *see People v Ayala*, 121 AD3d 1124, 1125 [2014], *lv denied* 25 NY3d 987 [2015]; *People v Griffiths*, 247 AD2d 550, 552 [1998], *lv denied* 92 NY2d 852 [1998]; *see generally* CPL 60.35 [1]; *People v Fitzpatrick*, 40 NY2d 44, 51-52 [1976]). "Trial testimony that the witness has no knowledge of or cannot recall a particular event [or fact], whether truthful or not, does not affirmatively damage the People's case" (*People v Lawrence*, 227 AD2d 893, 894 [1996]). *People v Berry* (27 NY3d 10 [2016], *rearg dismissed* 28 NY3d 1060 [2016]), relied upon by the majority, is distinguishable because the witness therein affirmatively damaged the People's case by testifying that he did not see defendant at the scene of a shooting when it occurred, which was tantamount to an assertion that defendant was not present inasmuch as the witness had allegedly been standing with defendant immediately prior to the shooting (*see id.* at 13-15, 18). Here, in contrast, the witness's claimed inability to identify the driver at trial failed to corroborate, but did not *contradict*, the People's theory that the driver was defendant (*see Fitzpatrick*, 40 NY2d at 52; *Ayala*, 121 AD3d at 1125; *see generally People v Saez*, 69 NY2d 802, 803-804 [1987]; *People v James*, 137 AD3d 1587, 1589 [2016]).

Nevertheless, we conclude that the court's error in permitting the People to impeach the victim's girlfriend is harmless.

As noted by the majority, the People's evidence included a recorded 911 call in which the victim's girlfriend identified defendant as the shooter and the testimony of an inmate witness that defendant admitted to the shooting. In addition, the inmate witness testified that defendant admitted that his brother had "paid off" the victim, and the People introduced recordings of telephone calls from jail tending to establish that defendant was trying to prevent the victim and the victim's girlfriend from testifying. We therefore conclude that the evidence of guilt is overwhelming, and there is no significant probability that defendant would have been acquitted but for the error (see People v Cartledge, 50 AD3d 1555, 1555-1556 [2008], lv denied 10 NY3d 957 [2008]; see also Saez, 69 NY2d at 804; People v Comer, 146 AD2d 794, 795 [1989], lv denied 73 NY2d 976 [1989]). We note that the jury would have been aware from the 911 call that the victim's girlfriend had previously identified defendant even if the People had not been permitted to impeach her with her grand jury testimony and police statement. Present—Whalen, P.J., Smith, DeJoseph, Troutman and Scudder, JJ.