People v Nunes (2019 NY Slip Op 00165)





People v Nunes


2019 NY Slip Op 00165


Decided on January 10, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 10, 2019

108585

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
CARLSON NUNES, Appellant.

Calendar Date: November 14, 2018

Before: Mulvey, J.P., Devine, Aarons, Rumsey and Pritzker, JJ.


Matthew C. Hug, Albany, for appellant.
Robert M. Carney, District Attorney, Schenectady (Peter H. Willis of counsel), for respondent.



MEMORANDUM AND ORDER
Rumsey, J.
Appeal from a judgment of the Supreme Court (Milano, J.), rendered April 26, 2016 in Schenectady County, upon a verdict convicting defendant of the crimes of murder in the second degree, manslaughter in the first degree, attempted robbery in the first degree (three counts), attempted robbery in the second degree, criminal possession of a weapon in the second degree (two counts), aggravated criminal possession of a weapon, criminal use of a firearm in the second degree (two counts) and assault in the second degree.
Defendant was charged in a 14-count indictment based upon allegations that he shot and killed Carlos Figueroa during a confrontation that ensued following a failed drug transaction. According to defendant, the weapon had been possessed by the victim and accidently discharged during the confrontation. After a jury trial, defendant was convicted of murder in the second degree, manslaughter in the first degree, three counts of attempted robbery in the first degree, attempted robbery in the second degree, two counts of criminal possession of a weapon in the second degree, aggravated criminal possession of a weapon, two counts of criminal use of a firearm in the second degree and assault in the second degree. Defendant was sentenced to a prison term of 22 years to life for the murder conviction and lesser determinate sentences on the remaining convictions, all sentences to run concurrently. Defendant appeals.
Defendant contends that the verdict was not supported by legally sufficient evidence and was against the weight of the evidence. " When considering a challenge to the legal sufficiency of the evidence, we view the evidence in the light most favorable to the People and evaluate whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged. A weight of the evidence review requires us first to decide whether, based on all the credible evidence, a different finding would not have been unreasonable, and then, like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of [*2]conflicting inferences that may be drawn from the testimony. When conducting a review of the weight of the evidence, we view the evidence in a neutral light and defer to the jury's credibility assessments" (People v Granger, 166 AD3d 1377, 1378 [2018] [internal quotation marks and citations omitted]).
On February 16, 2015, defendant's brother, Christopher Nunes, contacted defendant by telephone and requested that defendant participate in a plan that Nunes and Rab Everitt had made to acquire marihuana from Justice Pulver. Everitt testified that he had initially received a call from Nunes, who asked whether they could "find a come up," which Everitt explained was slang for a robbery. Yunis Johnson, defendant's girlfriend and the mother of his child, testified that she was with defendant when he received the telephone call from Nunes and that after the call ended, she and defendant went to defendant's home where he retrieved a black handgun — which she had seen in defendant's possession on multiple prior occasions — and placed it in the front pocket of his sweatshirt. Defendant then called Sheiquan Parker and requested that he participate in the planned transaction for "assurance" because he was "a big guy . . . [with] weight on him." Johnson drove Nunes, Parker, Everitt and defendant to the City of Schenectady, Schenectady County, where Everitt had arranged to meet Pulver.
Johnson, Everitt, Parker and defendant all testified that they planned to steal the marihuana from Pulver, who testified that he planned to rob Everitt by wrapping multiple plastic shopping bags to make them resemble a package of marihuana that he could throw in the car before grabbing Everitt's money and fleeing. When defendant's group arrived in Schenectady, they drove past the agreed-upon meeting place before dropping defendant, Nunes and Parker off at a nearby convenience store, where they hid in an alley. Johnson testified that when defendant exited the car, he asked "is everybody ready?" and pulled the gun from his pocket. Johnson and Everitt then drove to the meeting location. When Pulver approached the car accompanied by the victim, Everitt rolled the passenger window down and demanded to see the marihuana. After the victim displayed the package, Everitt asked for the opportunity to smell the marihuana. Pulver and the victim left, ostensibly for the purpose of cutting open the package to permit Everitt to examine the marihuana. Defendant, Nunes and Parker then ran from the alley. Defendant jumped over a snowbank and ran directly towards Pulver and the victim. Pulver testified that neither he nor the victim were armed and that, as defendant approached them, defendant drew a gun and aimed it at them, demanding "give us the weed or give us everything you got." Pulver then yelled "he has it" and threw his hands in the air. Defendant and the victim engaged in a brief struggle during which the victim was struck in the head twice before he died instantly upon being shot once in the neck. Defendant, Nunes and Parker returned to the car and fled the scene. As they drove away, defendant said, "I went to pistol whip him and the gun went off," and told Everitt, "You better not say nothing, white boy." Johnson testified that she disposed of the gun the next day by giving it to an individual she knew only as "Shadow." Defendant testified that when he saw the victim and Pulver walking away from Johnson and Everitt, he exited the alley and confronted them. Defendant further testified that when the victim displayed a gun, he responded by knocking the gun from the victim's hands before retrieving it from the ground. According to defendant, he then swung the gun at the advancing victim in self-defense when it discharged.
When viewing the evidence in the light most favorable to the People, the verdict was based upon legally sufficient evidence. The testimony that defendant possessed a handgun and that he confronted the victim with a demand for property while armed with the gun before striking and killing the victim was legally sufficient to establish beyond a reasonable doubt each of the elements of the crimes for which he was convicted. Turning to the weight of the evidence, defendant argues that witnesses who testified for the People were not credible and provided contradictory accounts of key events. Although a different verdict would not have been unreasonable because the jury could have credited defendant's testimony that he did not possess a gun and that he had acted in self-defense, the conflicting testimony and credibility issues were "fully explored during cross-examination and, in the final analysis, posed credibility questions for the jury to resolve" (People v Wells, 141 AD3d 1013, 1023 [2016] [internal quotation marks and citation omitted], lvs denied 28 NY3d 1183, 1189 [2017]). When we accord deference to the [*3]jury's credibility assessment and view the evidence in a neutral light, we find that the verdict was supported by the weight of the evidence.
Defendant also contends that Supreme Court committed reversible error by allowing the People to impeach Parker, their own witness, on five occasions during direct examination. CPL 60.35 modified the common-law rule against impeachment of one's own witness by allowing a party who calls a witness to use certain prior contradictory statements to impeach the credibility of the witness or to refresh his or her recollection (see People v Berry, 27 NY3d 10, 17 [2016]). CPL 60.35 is applicable when a witness gives testimony on a material issue in the case that is contradicted by a prior statement. When the testimony adduced at trial tends to disprove the position of the party who called the witness, the content of the statement may be admitted only for the purpose of impeachment, provided that the court give an appropriate limiting instruction upon receipt of the evidence (see CPL 60.35 [1], [2]; People v Berry, 27 NY3d at 17). However, when the trial testimony regarding a material issue in the case does not tend to disprove the position of the party who called the witness, a prior contradictory statement is inadmissible and may be used only to refresh the recollection of the witness in a manner that does not disclose its content to the jury (see CPL 60.35 [3]; People v Bellamy, 26 AD3d 638, 640 [2006]).
During Parker's direct examination, Parker testified that the plan to acquire marihuana was that "if [Everitt] couldn't snatch it, buy the weed." Over defendant's objection, the People were permitted to read Parker's grand jury testimony in which he stated, "Yeah, there was a backup plan, that once they come to the car we were going to hop out and just take the weed." Supreme Court promptly gave an appropriate limiting instruction. Parker's testimony that the plan was to purchase the marihuana if the initial attempt to snatch it failed tended to disprove the position of the People that defendant came to the scene with the intent to rob the victim and Pulver. Accordingly, Supreme Court properly permitted the People to use Parker's contradictory grand jury testimony for impeachment purposes (see People v Berry, 27 NY3d at 18; People v West, 166 AD3d 1080, 1087 [2018]).
We do find that Supreme Court improperly allowed the People to refresh Parker's recollection with respect to his trial testimony that he did not see defendant and Nunes leave the alley, because whether Parker saw defendant leave the alley was not a material issue in light of evidence — including Parker's testimony and defendant's admission — that placed defendant in close proximity to the victim at the time of the shooting. Supreme Court similarly erred by permitting the People to refresh Parker's recollection based on his testimony that he could not identify the person whom he saw pick up and discard a plastic bag that was on the ground near the victim immediately after the shooting because such testimony is not relevant to a material issue in the case. However, in light of the overwhelming evidence of defendant's guilt, we find such errors to be harmless (see People v Abrams, 73 AD3d 1225, 1227 [2010], affd 17 NY3d 760 [2011]).
Defendant also contends that Parker was improperly impeached a fourth time regarding a discussion that occurred among him, Parker, Nunes, Johnson and Everitt as they left the scene of the shooting in the car. When asked during direct examination if defendant said anything in the car, Parker responded, "I'm not sure." Supreme Court then stated to Parker, "[Y]ou've given previous testimony regarding certain people saying certain things in the car. . . . The question now on the floor is what, if anything, else did [defendant] say in the car?" When Parker answered that he was still unsure, Supreme Court allowed the People to refresh Parker's recollection by having him read the relevant portion of his grand jury testimony. After Parker stated that he remained unsure as to whether defendant had said anything in the car, the People asked him, "[D]id defendant say anything about the bag?" Assuming, without deciding, that Supreme Court properly permitted the People to refresh Parker's recollection, the questions posed by the court and the People that related the nature and content of Parker's prior testimony were impermissible methods of refreshing his recollection that constituted impeachment (see CPL 60.35; People v Brazzeal, 172 AD2d 757, 759 [1991]). A prior inconsistent statement may not be used to impeach a party's own witness who is noncommittal or does not contradict factual evidence presented by the party who called the witness (see People v Abrams, 73 AD3d at 1227). [*4]However, the error was harmless because there was overwhelming evidence of defendant's guilt (see id.).
Defendant also contends that Supreme Court improperly permitted the People to impeach Parker's testimony regarding the possession of a weapon. When asked whether defendant had a firearm, Parker testified, "I don't believe so." Such testimony is a denial, not an expression of an inability to remember. Thus, inasmuch as Parker's testimony contradicted the People's position that defendant possessed the weapon prior to the shooting — a material issue in the case — Supreme Court properly permitted the People to impeach Parker by reading his grand jury testimony that he knew that defendant possessed a gun before the shooting occurred (see People v Davis, 45 AD3d 1039, 1042 [2007], lv denied 10 NY3d 763 [2008]).
Defendant next contends that Supreme Court erred in allowing Johnson to testify that she saw defendant in possession of a black pistol on several occasions prior to the shooting. "Generally speaking, evidence of uncharged crimes or prior bad acts may be admitted where they fall within the recognized Molineux exceptions — motive, intent, absence of mistake, common plan or scheme and identity — or where such proof is inextricably interwoven with the charged crimes, provides necessary background or completes a witness's narrative" (People v Burnell, 89 AD3d 1118, 1120 [2011] [internal quotation marks, brackets and citations omitted], lv denied 18 NY3d 922 [2012]). The evidence regarding defendant's prior possession of a handgun was inextricably interwoven with the charged crimes and tended to show that defendant had access to the weapon that was used in the shooting, and we discern no error in Supreme Court's conclusion that its probative value outweighed any prejudicial effect (see id. at 1121; People v Lee, 80 AD3d 877, 880 [2011], lvs denied 16 NY3d 832, 833, 834 [2011]; People v Portee, 56 AD3d 947, 950 [2008], lv denied 12 NY3d 820 [2009]).
Supreme Court properly denied defendant's request for an adverse inference charge with respect to video recordings and text messages. "The People have no constitutional or statutory duty to acquire, or prevent the destruction of, evidence generated and possessed by private parties, and the fact that a police officer viewed [a] video recording does not place it within the People's constructive possession or control" (People v Matos, 138 AD3d 426, 427 [2016] [internal quotation marks, brackets and citations omitted], lv denied 27 NY3d 11135 [2016], cert denied ___ US ___, 137 S Ct 577 [2016]; accord People v Turner, 118 AD3d 463, 463 [2014], lv denied 23 NY3d 1068 [2014]; see People v Suyoung Yun, 140 AD3d 402, 403 [2016], lv denied 28 NY3d 937 [2016]; People v Hooks, 71 AD3d 1184, 1186 [2010]; People v Banks, 2 AD3d 226, 226 [2003], lv denied 2 NY3d 737 [2004]). The Schenectady Police Department received a tip from a woman who said that her son may have seen someone retrieve a gun from a dumpster located behind a store approximately one block from the shooting shortly before the incident. Thomas Mattice, a detective with the Schenectady Police Department, testified that he reviewed approximately 45 to 60 minutes of a video recording from a camera that depicted the area around the store, and that he did not see anyone enter or leave the fenced-in area behind the store during that time. Although Mattice did not take any steps to preserve the video recording, a recording of the 35 minutes immediately prior to the shooting was preserved and admitted into evidence at trial [FN1]. Under such circumstances, the People had no duty to acquire or preserve additional video footage. Likewise, they had no duty to acquire or preserve text messages that Pulver sent immediately following the shooting.
We reject defendant's argument that Supreme Court erred when, after summations were given, it changed its original determination and concluded that a justification instruction would not be given for count 1 — the felony murder charge. Supreme Court properly concluded that a justification defense is not available in a prosecution for felony murder (see People v Walker, 78 AD3d 63, 68, 71 [2010], lv denied 15 NY3d 956 [2010]). Further, although a defendant is ordinarily deprived of the right to an effective summation where the court informs the parties of the charges that it intends to deliver and, after summations, changes the instructions (see People [*5]v Layer, 199 AD2d 564, 564-565 [1993], lv denied 83 NY2d 855 [1994]), there was no prejudice here because Supreme Court informed counsel of the change and permitted them to reopen summations (see People v Altamirano, 61 Misc 3d 1, 4-5 [App Term, 2d Dept, 11th & 13th Jud Dists 2018]).
Finally, we reject defendant's contention that the prosecutor's comments during summation deprived him of a fair trial. " Reversal based on prosecutorial misconduct during summation is warranted only if the misconduct is such that the defendant suffered substantial prejudice, resulting in a denial of due process. That determination hinges upon the severity and frequency of the conduct, whether the trial court took appropriate action to dilute the effect of the conduct and whether, from a review of the evidence, it can be said that the result would have been the same absent such conduct" (People v Wynn, 149 AD3d 1252, 1255 [2017] [internal quotation marks and citations omitted], lv denied 29 NY3d 1136 [2017]). The challenged statements were not improper because they were responsive to defendant's attack on the credibility of the People's witnesses or constituted fair comment on the evidence (see id. at 1256; People v Rivera, 124 AD3d 1070, 1075 [2015], lvs denied 26 NY3d 971 [2015]; People v Hawkins, 110 AD3d 1242, 1244 [2013], lv denied 22 NY3d 1041 [2013]). Defendant's remaining contentions have been considered and found to lack merit.
Mulvey, J.P., Devine, Aarons and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: No other footage of the recording was preserved.