(August 10, 2000)

■ The People of the State of New York, Respondent, v Kristofer J. Surdis, Appellant. [711 NYS2d 875] —Cardona, P. J. Appeal from a judgment of the County Court of Ulster County (Bruhn, J.), rendered December 24, 1998, upon a verdict convicting defendant of two counts of the crime of falsely reporting an incident in the first degree.

Defendant was indicted for two counts of falsely reporting an incident in the first degree stemming from two bomb threats made by telephone to the Grand Union grocery store in the Village of Delhi and the CVS pharmacy in the Village of Margaretville, Delaware County, on December 5, 1997 at approximately 4:42 P.M. and 7:09 P.M., respectively. Following a jury trial, he was convicted as charged and sentenced, as a second felony offender, to consecutive prison terms of 2 to 4 years on each count.

Initially, defendant contends that the evidence only supports convictions for falsely reporting an incident in the third degree, not first degree. He reasons that in announcing the presence of a bomb on the premises and calling for the evacuation of the building, the caller was warning of the "impending occurrence of a crime, catastrophe, or emergency" (Penal Law § 240.50 [1]) and not the "impending occurrence of a fire [or an] explosion" (Penal Law § 240.55 [1]), since there was no indication that a

bomb would actually explode.* We disagree. In our view, a warning of the existence of a bomb carries with it the implication of an impending explosion. Defendant's conduct fell within the plain intendment of Penal Law § 240.60 (1) and § 240.55 (1).

Next, defendant argues that County Court improperly admitted into evidence the record of a telephone call made to the Grand Union on December 5, 1997 at 4:42 P.M. from a pay phone allegedly used by defendant. William Perk, a senior investigator for Bell Atlantic, identified special billing tapes on phone records kept in the normal course of the company's business. He testified that the records showed that two calls were made to the Grand Union that day within one minute of each other and that each call originated from the same pay phone. Perk related that the first call occurred at 4:41 P.M. Bell Atlantic's phone record showed that the call originated from the pay phone number allegedly used by defendant and was unanswered. Bell Atlantic's record of the second call showed that it was made at 4:42 P.M., but unlike the earlier call it did not display the originating phone number. According to Perk, the record showed that the call was operator assisted, answered, that it lasted 11 seconds and was placed through another carrier, American Exchange. He stated that American Exchange provided the originating number in a fax sent to his office. Perk indicated that he then maintained that fax as part of his records of the investigation in this matter.

In our view, Perk's testimony failed to provide the necessary foundation as to the regular, systematic, routine and contemporaneous nature of the American Exchange record to permit its admission into evidence (*see, People v Kennedy*, 68 NY2d 569, 579; *see generally, People v Cratsley*, 86 NY2d 81, 89-90). Notably, Perk failed to testify that he had knowledge of American Exchange's particular recordkeeping procedures such that he could state that the record he received was made in the regular course of its business, that it was in the regular course of its business to make the record and that it was made contemporaneously with the phone call (*see*, CPLR 4518 [a]). Under the circumstances here, Perk's mere receipt and retention of

---

* We note that in 1979 the Legislature elevated the false reporting of an "explosion" from the third degree offense to the second degree offense (*see*, L 1979, ch 146; Penal Law § 240.55 [1]), a class A misdemeanor, to deter the rising number of false bomb threats (*see*, Donnino, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law § 240.50, at 440). Since defendant has previously been convicted of falsely reporting an incident in the second degree, the instant charges are class E felonies (*see*, Penal Law § 240.60 [1]).

the record is insufficient to qualify it as a business record (*see, People v Cratsley, supra,* at 90). Nevertheless, the error does not warrant reversal of defendant's conviction on the first count since we deem it harmless.

Raymond Roupp testified that he was the general manager of the Grand Union store in Delhi on December 5, 1997. He stated that he took a call at approximately 5:00 P.M. The caller told him that "there was a bomb in the store to get out". Roupp would not repeat in court the obscenities which the caller used. Roupp taped the call with a recorder provided by the State Police.

State Police Investigator William Manley testified that he had known defendant for over 10 years, had spoken with him five or six times in the past and, therefore, recognized his voice as the caller on the tape recording of the 4:42 P.M. call to the Grand Union store in Delhi. In addition, Manley placed defendant near the scene of the alleged crimes, a phone booth located on the corner of Third and Delaware Avenues when he first observed defendant at his mother's video store between 5:00 and 5:30 P.M., which was on the corner of First and Delaware Avenues. Although Manley did not observe defendant make the 4:42 P.M. call, he kept defendant under surveillance and watched him make the later call, charged in the second count, to the CVS pharmacy in Margaretville at approximately 7:06 P.M. Manley kept that booth under surveillance until 10:00 P.M. that evening and saw no one else make a call from it.

Melissa Ormiston, the CVS pharmacy shift manager on duty at the time of the second bomb threat, testified that the caller, whom she recognized as defendant because she had known him "practically her whole life", stated that there was a bomb in the store and to "get the f**k out you bitch". Bell Atlantic phone records confirmed that the bomb threat to the CVS pharmacy originated from the phone booth located at the corner of Third and Delaware Avenues. Thus, the close temporal proximity and similarity in the proof of the subsequent crime with that of the earlier one raised a strong inference that defendant was the perpetrator of both.

Furthermore, during questioning following his arrest on the morning of December 6, 1997, Manley asked defendant if he was sorry for making the calls and defendant acknowledged that he was sorry for making them. Finally, it is not insignificant that at the time of his arrest, in addition to $104 in currency on his person, defendant also possessed $5.75 in quarters.

In view of the overwhelming circumstantial evidence of

defendant's guilt and our further conclusion that there was no significant probability that defendant would have been acquitted but for the admission of the American Exchange phone record, we find that error harmless (*see, People v Crimmins*, 36 NY2d 230, 241-242).

We turn to defendant's argument that County Court improperly denied his motion to set aside the verdict based upon juror misconduct. At a postverdict hearing, defendant's sole witness testified that, on the first day of trial while he was outside the building on a break during jury selection, he overheard one person say that the proceedings should "be quick", another say "he's guilty" and a third say "we know it". Inasmuch as the witness did not know whether the persons who made the alleged statements were jurors, prospective jurors or members of the public merely observing the proceedings, we find that defendant failed to meet his burden of proving misconduct by a preponderance of the evidence (*see*, CPL 330.40 [2] [g]; *People v Lakomec*, 94 AD2d 892).

Next, we do not agree that defendant's admissions should have been suppressed as a result of duress. The evidence shows that defendant made a knowing, intelligent and voluntary waiver of his rights. Defendant was questioned by State Police Investigator William Manley who he knew for approximately 10 years. The questioning began at about 11:45 A.M. and ended at approximately 2:15 to 2:30 P.M. Notably there was no evidence indicating that Manley threatened defendant or forced him to make any statements. We also note that the questioning ceased when defendant requested an attorney. We discern insufficient evidence in the record to support defendant's claim of duress. Based upon the totality of the circumstances, we find that the People proved beyond a reasonable doubt that defendant's admissions were voluntary (*see, People v Anderson*, 42 NY2d 35, 38; *People v White*, 261 AD2d 653, 654, *lv denied* 93 NY2d 1029).

Defendant also argues that County Court's refusal to permit him to call two alibi witnesses deprived him of a fair trial. We disagree. Defendant never filed a notice of alibi despite the People's timely service of a demand therefor (*see*, CPL 250.20 [1]). His attempt to call the witnesses came eight months after service of the prosecution's demand for notice of alibi defense and four months after new defense counsel had entered the case. Under the circumstances, we cannot say that the court abused its discretion by excluding their testimony (*see*, CPL 250.20 [3]; *People v Morris*, 220 AD2d 808, 809, *lv denied* 87 NY2d 976; *People v Bunting*, 134 AD2d 646, 649, *lv denied* 70 NY2d 1004).

Nor do we find merit in defendant's claim of ineffective assistance of counsel premised upon the failure of his attorneys to file an alibi notice. Defendant's proffer of proof did not demonstrate that the potential alibi witnesses would actually testify that defendant was not in the vicinity of the pay phone during the commission of the crimes. The record reveals that defendant was provided meaningful representation (*see, People v Baldi*, 54 NY2d 137, 147).

We find defendant's remaining contentions either unpreserved for review or unpersuasive.

Peters, Spain, Mugglin and Lahtinen, JJ., concur. Ordered that the judgment is affirmed.