■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GREGORY GONZALEZ, Appellant. [882 NYS2d 598]—

Stein, J. Appeal from a judgment of the Supreme Court (Lamont, J.), rendered April 7, 2006 in Albany County, upon a verdict convicting defendant of the crimes of assault in the second degree and criminal possession of a weapon in the third degree.

Defendant and the victim lived together in an apartment in the City of Albany. On the evening of March 25, 2005, defendant left the apartment to go to a bar. After also leaving for a short time, the victim returned to the apartment with several friends, where he consumed alcohol. When defendant returned home in the early morning of March 26, 2005, the victim's friends had left. Defendant and the victim have markedly different versions of the events that transpired from that point forward. Nonetheless, it is undisputed that the victim and defendant had a physical altercation that resulted in the victim being stabbed in the right hand with a kitchen knife. Defendant was subsequently charged in a two-count indictment with the crimes of assault in the second degree and criminal possession of a weapon in the third degree. Following a jury trial, defendant was convicted as charged. Defendant now appeals and we affirm.

Defendant first contends that his convictions were not based on legally sufficient evidence and were against the weight of the evidence. We disagree. Initially, we note that defendant failed to preserve his claim regarding the legal sufficiency of the evidence because his counsel failed to raise at the trial level the specific deficiencies now challenged (*see People v Gray*, 86 NY2d 10, 20 [1995]; *People v Caston*, 60 AD3d 1147, 1148-1149 [2009]; *People v Balram*, 47 AD3d 1014, 1015 [2008], *lv denied* 10 NY3d

859 [2008]). "However, we necessarily review the evidence adduced as to each of the elements of the crimes in the context of our review of defendant's challenge regarding the weight of the evidence" (*People v Caston*, 60 AD3d at 1148-1149 [citations omitted]; *see People v Danielson*, 9 NY3d 342, 349 [2007]).

Where, "based on all the credible evidence a different finding would not have been unreasonable" (*People v Bleakley*, 69 NY2d 490, 495 [1987]), "the court must [then] weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions. Based on the weight of the credible evidence, the court then decides whether the jury was justified in finding the defendant guilty beyond a reasonable doubt" (*People v Danielson*, 9 NY3d at 348 [citation omitted]; *see People v Romero*, 7 NY3d 633, 636 [2006]; *People v Bleakley*, 69 NY2d at 495; *People v Caston*, 60 AD3d at 1149).

In order to convict defendant of assault in the second degree, the People were required to prove that, "[w]ith intent to cause physical injury to another person, [defendant] cause[d] such injury to such person . . . by means of a deadly weapon or a dangerous instrument" (Penal Law § 120.05 [2]). With respect to defendant's conviction for criminal possession of a weapon in the third degree, the People were required to prove that defendant possessed "any dagger, dangerous knife, dirk, razor, stiletto, imitation pistol, or any other dangerous or deadly instrument or weapon with intent to use the same unlawfully against another" (Penal Law § 265.01 [2]) and that he had been previously convicted of a crime (*see* Penal Law § 265.02 [1]).

Here, the victim testified to the following. Defendant came home in the early morning hours of March 26, 2005 and became angry when it was apparent that other individuals had been in the apartment with the victim. An altercation began when defendant, apparently without uttering a word, crossed the room and punched the victim in the face. After struggling with defendant, the victim retreated into the kitchen area and grabbed a frying pan with which he hoped to defend himself. A second physical confrontation ensued in the kitchen, after which the victim ran into the bedroom and locked the door. Defendant then retrieved a kitchen knife, began "stabbing through the door" with it, and eventually broke through the door and "came at" the victim. The victim grabbed defendant's wrists in an attempt to ward off the knife attack and another struggle ensued during which defendant pushed the victim backwards and, after a brief standstill, stabbed him through the right hand. The victim testified that he was bleeding profusely after the inflic-

tion of the knife wound and that, as a result, he no longer had strength in his right hand.

This evidence establishes defendant's guilt on both charges beyond a reasonable doubt (*see People v Bleakley*, 69 NY2d at 495; *People v Hines*, 9 AD3d 507, 511 [2004], *lv denied* 3 NY3d 707 [2004]). The knife that defendant used to inflict the injuries constituted a deadly weapon or dangerous instrument (*see* Penal Law § 10.00 [12], [13]; *People v Mothon*, 284 AD2d 568, 569 [2001], *lv denied* 96 NY2d 865 [2001]), and "defendant's intent to cause physical injury . . . may be inferred [from his] conduct and the surrounding circumstances" (*People v Zindle*, 48 AD3d 971, 973 [2008], *lv denied* 10 NY3d 846 [2008]). Furthermore, as alleged in the special information, defendant was previously convicted of the crime of sodomy in the third degree in November 2001.

There is no question that defendant's version of the events differs significantly from that of the victim. The victim does not dispute defendant's claim that the victim was under the influence of alcohol when defendant arrived home at approximately 3:45 A.M. on March 26, 2005. However, defendant testified that the two men then had an argument over rent which became physical, but that it was the victim who grabbed the knife and attacked defendant. Although defendant testified that he "didn't really see" what happened next, he claimed that the victim managed to cut himself with the knife. In addition to the testimony of defendant and the victim, the jury heard the testimony of Detective John Willey that he found a bloody knife and that he observed the bedroom door, which appeared to have been punctured or stabbed. Police Officer John Moscatello also testified that, when he arrived on the scene, defendant was walking in front of the apartment, there was blood on his clothing and defendant was sweating, despite the cold temperature. Moscatello further testified that, upon reading defendant his *Miranda* warnings, he stated that "[the victim] knew I would be pissed because he was having a party."

The fact that the victim was under the influence of alcohol at the time of the events in question does not render his testimony incredible as a matter of law (*see People v Wrigglesworth*, 204 AD2d 758, 760 [1994]). The victim was cross-examined on his level of intoxication and the jury was free to make its own determination regarding his ability to recount what had happened. While defendant's version of the events, if true, leads to a markedly different conclusion, after evaluating the evidence in a neutral light (*see People v Hines*, 9 AD3d at 511) and according deference to the jury's determinations "due to its unique op-

portunity to view the witnesses, observe demeanor, and hear the testimony" (*People v Haight*, 19 AD3d 714, 716 [2005], *lv denied* 5 NY3d 806 [2005]; *see People v Mateo*, 2 NY3d 383, 415 [2004], *cert denied* 542 US 946 [2004]), we conclude that the verdict was in all respects supported by the weight of the evidence and should not be set aside (*see People v Bleakley*, 69 NY2d at 495).

We also discern no error in Supreme Court's failure to give a justification charge to the jury. Even when viewing the evidence in a light most favorable to defendant, " 'no reasonable view of the evidence establishes the elements of the defense' " (*People v Grady*, 40 AD3d 1368, 1371 [2007], *lv denied* 9 NY3d 923 [2007], quoting *People v Reynoso*, 73 NY2d 816, 818 [1988]; *accord People v Zindle*, 48 AD3d at 974). According to defendant's own version of the events, defendant did not cause the injury to the victim, and any determination that defendant did cause such injury, but was justified in doing so, would necessarily be based on rampant speculation.

Defendant's claim that Supreme Court abused its discretion by failing to declare a mistrial on the ground of jury deadlock is equally unavailing. "To justify a mistrial on deadlock grounds, it must be 'clear that the jury is hopelessly deadlocked and that there is no reasonable probability it can agree' " (*Matter of Rivera v Firetog*, 11 NY3d 501, 506 [2008], *cert denied* 556 US —, 129 S Ct 2012 [2009], quoting *People v Baptiste*, 72 NY2d 356, 360 [1988] [citation omitted]).

Here, after deliberating for approximately eight hours, the jury sent a note to Supreme Court which read, "Your honor, we are unable to arrive at a consensus after much deliberation. We request your guidance as to how to proceed. Thank you." In denying defendant's request for a mistrial, Supreme Court correctly determined, among other things, that the jurors had not indicated that they were deadlocked, but were simply asking for guidance. The jurors were then allowed to retire to their homes for the evening. When the jurors returned the following day, Supreme Court gave a detailed *Allen* instruction (*see generally Allen v United States*, 164 US 492 [1896]), which was neutral and not coercive in any way and which appropriately reminded the jurors that it was their "duty and responsibility to consult with one another and to deliberate together with the view [of] reaching a unanimous agreement, if you can do so without compromise or violence to individual judgment." According due deference to Supreme Court's determination (*see Matter of Rivera v Firetog*, 11 NY3d at 506), we cannot say that the failure to declare a mistrial was an abuse of discretion (*see People v Love*,

307 AD2d 528, 530-531 [2003], *lv denied* 100 NY2d 643 [2003]; *see generally* CPL 310.60).

We have considered defendant's remaining contention and find it to be without merit.

Peters, J.P., Rose, Lahtinen and McCarthy, JJ., concur. Ordered that the judgment is affirmed.