■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MALINDA K. BURDICK, Appellant. [900 NYS2d 195]—

Peters, J.P. Appeal from a judgment of the County Court of Otsego County (Burns, J.), rendered December 7, 2007, upon a verdict convicting defendant of the crime of grand larceny in the third degree.

Defendant was charged in a one-count indictment with grand larceny in the third degree based on allegations that she stole $22,245 in lottery tickets from the Taylors Mini Mart in the Village of Richfield Springs, Otsego County between January 2004 and February 2006. At the ensuing jury trial, Andrea Baker, the general manager of Taylors Mini Marts, testified that defendant was employed as the manager of the Richfield Springs store and was responsible for securing its lottery ticket inventory and verifying the accuracy of the lottery ticket sales records. She explained that, before scratch-off tickets are put out for sale, it is the store manager's responsibility to scan the activation slip into the lottery machine in order to activate the tickets. According to Baker, a book of lottery tickets can be activated only by or with the assistance of a manager and only the store's manager has a key to the top safe where the books are kept.

She further explained that store employees are required to record in the daily store shift sheets the number of lottery tickets that are sold each day and that it was normal practice for an activated book to be documented on the daily store shift sheet by or at the direction of the store's manager.

Through Baker's testimony and a considerable amount of documentary evidence, consisting mainly of the Taylors' business records, it was established that seven scratch-off lottery books, each valued at $500, were received by the Richfield Springs mini mart and activated on specified dates between January 2004 and February 2006. Using two New York State Lottery activation and winners reports, the People were able to establish that, within a short period of time of being activated, winning tickets from each of the seven books at issue were redeemed; however, no sales from any of those books were inventoried on the store's daily store shift sheets between the time each book was activated and the time the winning tickets were redeemed. Significantly, Taylors' records revealed that defendant was working either alone or with one other employee, her daughter, at the store at the time when each of the seven books was activated and the never-been-sold winning tickets were redeemed.* Baker testified that, upon confronting defendant, she had no explanation for the discrepancy and stated that she had thrown out potentially relevant lottery logs believing that they were no longer needed.

Defendant testified on her behalf and disclaimed any knowledge about the missing lottery tickets. She stated that she had never worked alone at the Richfield Springs store, does not play the lottery and has never cashed a ticket at her store. She explained that she kept the lottery tickets in the bottom safe, that all employees had access to its key and that trained employees would be permitted to order, receive and activate lottery books. Defendant also presented certain alibi evidence relating to her whereabouts on one of the dates at issue.

Following the trial, defendant was convicted as charged, sentenced to six months in jail followed by five years of probation, and ordered to pay $22,245 in restitution. She now appeals.

Defendant first argues that the verdict is not supported by legally sufficient evidence and is against the weight of the evidence. Her sufficiency claim is unpreserved for our review since her motion to dismiss was not grounded on any of the specific

* The only exception is two redemptions in November 2004, which occurred at a time when defendant was not working.

deficiencies in the evidence she now claims (*see People v Gray*, 86 NY2d 10, 19 [1995]; *People v Bynum*, 70 NY2d 858, 859 [1987]; *People v Gonzalez*, 64 AD3d 1038, 1039-1040 [2009], *lv denied* 13 NY3d 796 [2009]). As to the weight of the evidence issue, while a different result would not have been unreasonable, after evaluating the evidence in a neutral light and according appropriate deference to the jury's credibility determinations, we conclude that the verdict was not against the weight of the evidence (*see People v Bleakley*, 69 NY2d 490, 495 [1987]; *People v Barringer*, 54 AD3d 442, 443 [2008], *lv denied* 11 NY3d 830 [2008]).

We do, however, agree with defendant's assertion that County Court erred in admitting into evidence the two New York State Lottery activation and winners reports under the business records exception to the hearsay rule. As these hearsay reports were admitted, over objection, for the truth of their contents—that specific lottery tickets were redeemed at specific times and places—they were admissible only if the foundational requirements of CPLR 4518 (a) were met (*see People v Cratsley*, 86 NY2d 81, 88-89 [1995]; *People v Kennedy*, 68 NY2d 569, 578 [1986]; *see also* CPL 60.10). To admit a document offered as a business record under CPLR 4518, it must be established that the record was made in the regular course of business, that it was the regular course of business to make such record and that the record was made contemporaneously or within a reasonable time after the act, transaction, occurrence or event being recorded (*see* CPLR 4518 [a]; *People v Brown*, 13 NY3d 332, 341 [2009]; *People v Cratsley*, 86 NY2d at 89).

Here, Baker provided the only foundational testimony for the admission of the two New York State Lottery reports. Although she testified that she requested, received and filed these two reports in the normal course of Taylors' business, "the mere filing of papers received from other entities, even if they are retained in the regular course of business, is insufficient to qualify the documents as business records," because "[s]uch papers simply are not made in the regular course of business of the recipient, who is in no position to provide the necessary foundation testimony" (*People v Cratsley*, 86 NY2d at 90 [citations omitted]; *see People v Rogers*, 8 AD3d 888, 891 [2004]; *People v Surdis*, 275 AD2d 553, 554-555 [2000], *lv denied* 95 NY2d 908 [2000]; *see also Lodato v Greyhawk N. Am., LLC*, 39 AD3d 494, 495 [2007]). Notably, Baker did not purport to have knowledge of the business practices and record-keeping procedures of the New York State Lottery, the entity that produced the records. As such, no testimony was presented that

the records were made in the regular course of the New York State Lottery's business, that it was in the regular course of the New York State Lottery's business to make the records, or as to when the records were made (*see People v Brown*, 13 NY3d at 341; *People v Surdis*, 275 AD2d at 554-555; *compare People v Cratsley*, 86 NY2d at 90-91). Thus, County Court erred in admitting the reports without proper foundation.

Nor can the error be deemed harmless under the circumstances of this case. The two activation and winners reports were a vital component to the People's case, which was grounded solely upon circumstantial evidence. They had significant evidentiary value, in that they provided the only evidence establishing that winning lottery tickets were being redeemed from lottery books that had been activated, but from which no sales had been recorded. These reports also provided the sole evidence of the time and date when the winning tickets were redeemed which, when considered in connection with other records establishing when the books were activated and defendant's work schedule, was critical to the People's theory that the lottery books were not merely lost or misplaced but, rather, were taken and redeemed by defendant. For these reasons, we cannot conclude that there was "no reasonable possibility that the erroneously admitted evidence contributed to the conviction" (*People v Hamlin*, 71 NY2d 750, 756 [1988]; *see People v Crimmins*, 36 NY2d 230, 237 [1975]; *People v Roberts*, 66 AD3d 1135, 1137 [2009]).

In light of our determination, we need not address defendant's remaining contentions.

Lahtinen, Malone Jr., Stein and Garry, JJ., concur. Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Otsego County for a new trial.

