[Cite as *State v. Kittle*, 2017-Ohio-7853.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No. 27977 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DANA M. KITTLE | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE Nos. CR 2014-12-3623(D) CR 2014-10-3259 |

DECISION AND JOURNAL ENTRY

Dated: September 27, 2017

HENSAL, Presiding Judge.

{¶1} Defendant-Appellant, Dana Kittle, appeals her conviction for illegal assembly or possession of chemicals for the manufacture of drugs from the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} This case involves the discovery of a methamphetamine lab and Ms. Kittle's involvement with same. Officer Lemonier from the Akron Police Department testified that he and another officer conducted surveillance on an apartment where they believed illegal activity was occurring. The officers observed Ms. Kittle and another woman, J.S., leave the apartment and get into Ms. Kittle's car, with J.S. taking the driver's seat. Shortly thereafter, the officers performed a traffic stop on the vehicle. During the stop, the officers discovered that J.S. did not have a driver's license and that she had an outstanding felony warrant. As a result, they placed her under arrest and searched her, finding three bags of methamphetamine in her purse. The

officers did not arrest or search Ms. Kittle, but did request that she empty her pockets, which revealed no illegal substances.

{¶3} The officers then returned to the apartment and knocked on the door. After about twenty minutes of waiting outside, one of the occupants allowed the officers inside. Upon entering, Officer Lemonier immediately smelled the distinct odor associated with the production of methamphetamine. The occupant then consented to a search of the apartment, which revealed a number of items associated with the production of methamphetamine, as well as several small bags containing the finished product.

{¶4} Through his investigation of the matter, including an interview with J.S., Officer Lemonier discovered information that implicated Ms. Kittle. Another officer located Ms. Kittle and brought her to the Akron Police Department for questioning. Officer Lemonier conducted the interview, wherein Ms. Kittle admitted to buying pseudoephedrine for J.S. in exchange for methamphetamine.

{¶5} A Grand Jury indicted Ms. Kittle on the following three counts: (1) illegal assembly or possession of chemicals for the manufacture of drugs in violation of Revised Code Section 2925.041(A); (2) illegal manufacture of drugs in violation of Section 2925.04(A); and (3) aggravated possession of drugs in violation of 2925.11(A),(C)(1). The State dismissed the latter two counts prior to trial.

{¶6} The case proceeded to a bench trial. The State presented testimony from one witness: Officer Lemonier. The State also played portions of Officer Lemonier's interview with Ms. Kittle, and introduced records from The National Precursor Log Exchange ("NPLEX"), which is a system that electronically tracks purchases of pseudoephedrine. Ms. Kittle did not present any evidence.

{¶7}   The trial court found Ms. Kittle guilty, and subsequently sentenced her to five years of imprisonment.  She now appeals, raising three assignments of error for our review.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED WHEN IT ADMITTED THE NPLEX RECORDS INTO EVIDENCE AND ALLOWED A POLICE OFFICER WHO WAS NOT A QUALIFIED WITNESS TO LAY THE FOUNDATION FOR INTRODUCING THE NPLEX RECORDS INTO EVIDENCE, IN VIOLATION OF MS. KITTLE'S CONSTITUTIONAL RIGHTS PURSUANT TO ARTICLE I, SECTION 10, OF THE OHIO CONSTITUTION AND THE CONFRONTATION CLAUSE OF THE SIXTH AMENDMENT OF THE U.S. CONSTITUTION.

{¶8}   In her first assignment of error, Ms. Kittle argues that the trial court erred by allowing Officer Lemonier to lay the foundation for the NPLEX records because he was not the custodian of those records, nor was he otherwise qualified to do so.  Ms. Kittle asserts that a de novo standard of review applies because the trial court's error in this regard implicated her rights under the Confrontation Clause.

{¶9}   We will begin by addressing the standard of review.  While Ms. Kittle's assignment of error suggests that she believes NPLEX records are testimonial in nature, thus implicating the Confrontation Clause, she does not develop an argument in that regard.  *See* App.R. 16(A)(7).  Rather, she cites Ohio Supreme Court precedent for the proposition that business records are nontestimonial, and states: "[a]ssuming that the NPLEX records of the pharmacy admitted into evidence in [this] case were truly nontestimonial in nature, the foundation for their proper authentication as 'business records' under the meaning of Evid.R. 803(6) could not have been established by [Officer Lemonier]."  Ms. Kittle does, however, develop such an argument in her reply brief, arguing that NPLEX records are testimonial

because the primary purpose of that system is to "assist in the interdiction of methamphetamine creation and use[.]"

{¶10} As an initial matter, we note that "[a]ppellate courts generally will not consider a new issue presented for the first time in a reply brief." *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 18. Notwithstanding, we are unpersuaded by Ms. Kittle's argument that NPLEX records are testimonial in nature, thus implicating the Confrontation Clause. This is because "[t]estimonial statements are those created or given with the primary purpose of creating an out-of-court substitute for trial testimony." *State v. Garcia*, 9th Dist. Summit Nos. 27810, 27811, 2016-Ohio-4667, ¶ 58, quoting *Ohio v. Clark*, 135 S.Ct. 2173, 2183 (2015). The purpose of the NPLEX system, however, is to track purchases of pseudoephedrine. *See* R.C. 3715.05; *State v. Coleman*, 5th Dist. Richland No. 14-CA-82, 2015-Ohio-3907, ¶ 35 ("The purpose of the NPLEx system is to monitor suspicious purchases of pseudoephedrine tablets."). We cannot say that NPLEX records are "created or given with the primary purpose of creating an out-of-court substitute for trial testimony." *Garcia* at *id.*; *United States v. Collins*, 799 F.3d 554, 586 (6th Cir.2015) (holding that a similar "MethCheck" record was "not clearly testimonial in nature," and stating that "it is improbable that a pharmacy employee running a standard identification check of a customer would have anticipated that the records of that transaction would later be used against these particular defendants at trial."). We, therefore, reject Ms. Kittle's contentions that her rights under the Confrontation Clause were implicated, and that a de novo standard of review applies.

{¶11} We now turn to Ms. Kittle's argument that the trial court erred by allowing Officer Lemonier to lay the foundation for the NPLEX records. This Court reviews a trial court's decision to admit a business record into evidence for an abuse of discretion. *State v.*

*Baker*, 9th Dist. Summit No. 21414, 2003-Ohio-4637, ¶ 9; *Coleman* at ¶ 35-42 (acknowledging that a NPLEX record is a business record). "A trial court is deemed to abuse its discretion where it admits a business record when the party lays an inadequate foundation to establish its admissibility in accordance with Evid.R. 803(6)." *Baker* at ¶ 9.

{¶12} Evidence Rule 803(6) provides that a business record is excepted from the hearsay rule if it is "kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the * * * record * * *, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10)[.]" "A 'qualified witness' for this purpose would be someone with 'enough familiarity with the record-keeping system of the business in question to explain how the record came into existence in the ordinary course of business.'" (Citation omitted.) *State v. Hood*, 135 Ohio St.3d 137, 2012-Ohio-6208, ¶ 40, quoting 5 McLaughlin, *Weinstein's Federal Evidence*, Section 803.08[8][a] (2d Ed.2009). Notably, "[t]he witness whose testimony establishes the foundation for a business record need not have personal knowledge of the exact circumstances of preparation and production of the document." *Baker* at ¶ 11, citing Evid.R. 803(6). The witness, however, must "demonstrate that he or she is sufficiently familiar with the operation of the business and with the circumstances of the preparation, maintenance, and retrieval of the record in order to reasonably testify on the basis of this knowledge that the record is what it purports to be, and was made in the ordinary course of business." *Id.*, quoting *Keeva J. Kekst Architects, Inc. v. George Dev. Group*, 8th Dist. Cuyahoga No. 70835, 1997 WL 253171, *5 (May 15, 1997).

{¶13} Here, Officer Lemonier testified that, through his training as a law enforcement officer, he has personal knowledge as to how pharmacies use the NPLEX system to track purchases of pseudoephedrine. He testified that he applied for – and was granted – a license to

access the system, which requires a username and password. He indicated that he accesses the NPLEX system every day, and that he receives real-time alerts for pseudoephedrine purchases.

{¶14} Regarding the process for electronically tracking purchases, Officer Lemonier explained that a person attempting to buy pseudoephedrine must provide an ID, which is then swiped. As soon as the ID is swiped, the information contained thereon is immediately transmitted to the NPLEX database. Within a few minutes, more specific information is transmitted, including the brand name, pill count, grams of pseudoephedrine contained in the package, and whether the purchase was accepted or denied. He stated that a purchase will be denied if the individual attempts to purchase more than nine grams of pseudoephedrine during a 30-day period.

{¶15} Officer Lemonier testified that he personally obtained the NPLEX record for Ms. Kittle, which was introduced as an exhibit, and that the record is kept in the ordinary course of business. To obtain the record, he entered Ms. Kittle's name, date of birth, and driver's license number into the NPLEX system, which then generated a list of pseudoephedrine purchases associated with that information. Officer Lemonier then testified as to the purchases of pseudoephedrine reflected in the NPLEX record.

{¶16} While not every police officer may have familiarity with the NPLEX system or the ability to explain how those records came into existence in the ordinary course of business, the record reflects that Officer Lemonier did, in fact, have this knowledge. He, therefore, was a "qualified witness" for purposes of Evidence Rule 803(6). Thus, we cannot say that the trial court abused its discretion when it admitted the NPLEX records into evidence. Accordingly, Ms. Kittle's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED WHEN IT ABDICATED ITS DUTIES AS A NEUTRAL AND IMPARTIAL FINDER OF FACT BY DIRECTING THE PROSECUTION TO SUPPLEMENT ITS EVIDENCE AGAINST MS. KITTLE MID-TRIAL, IN VIOLATION OF HER CONSTITUTIONAL RIGHTS TO A FAIR TRIAL AND DUE PROCESS UNDER ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION AND THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION.

**{¶17}** In her second assignment of error, Ms. Kittle argues that the trial court abdicated its duties as a neutral and impartial finder of fact by directing the State to supplement its evidence against her at trial. Similar to her first assignment of error, she contends that a de novo standard of review applies, arguing that the trial court's actions deprived her of a fair trial. We disagree that a de novo standard of review applies, and otherwise find no merit in her argument.

**{¶18}** Evidence Rule 614(B) provides that "[t]he court may interrogate witnesses, in an impartial manner, whether called by itself or by a party." As this Court has stated, "'[t]he evident purpose of Evid. R. 614(B) is to prevent the trial judge, in questioning the witness, from conveying to a jury the judge's impression as to the credibility or lack of credibility of a witness.'" *State v. Grad*, 9th Dist. Medina No. 10CA0003-M, 2012-Ohio-1385, ¶ 44, quoting *State v. Armstrong,* 2d Dist. Montgomery No. 13498, 1993 WL 294834, *5 (Aug. 6, 1993). When, as is the case here, the matter is proceeding as a bench trial, the trial judge is afforded greater flexibility in questioning a witness because there is no risk of prejudicially influencing a jury. *Id.* "In absence of any showing of bias, prejudice, or prodding of a witness to elicit partisan testimony, it will be presumed that the trial court acted with impartiality [in propounding to the witness questions from the bench] in attempting to ascertain a material fact or to develop the truth.'" (Alterations sic.) *State v. Baston*, 85 Ohio St.3d 418, 426 (1999), quoting *Jenkins v. Clark*, 7 Ohio App.3d 93, 98 (2d Dist.1982). "In reviewing any alleged prejudicial errors

resulting from the court's own interrogation of a witness, a reviewing court will examine the questions in light of the entire record and, based upon the totality of the circumstances, determine whether there has been a manifest abuse of discretion." *Grad* at ¶ 43, quoting *State v. Hoover,* 9th Dist. Medina No. 1549, 1987 WL 12247, *2 (June 3, 1987).

{¶19} Here, when cross-examining Officer Lemonier, Ms. Kittle's counsel pointed out that the NPLEX record did not contain certain information, such as the form of identification used to purchase the pseudoephedrine. Officer Lemonier indicated that if he logged into the NPLEX system and clicked on a certain field, that information would populate onto the record, which he could then print. He further indicated that it was not his typical practice to print that information, and that it had never been an issue in prior trials that he has been involved in.

{¶20} The trial court noted that it was "engaged in a matter to find the truth[,]" and did not fault the State for failing to provide an expanded version of the NPLEX record. The trial court then allowed Officer Lemonier to print an expanded version, which included the missing information. Despite the trial court's willingness to allow Ms. Kittle's counsel a few days to review the record and prepare accordingly, her counsel elected to proceed as scheduled and chose not to cross-examine Officer Lemonier on the expanded record.

{¶21} Based upon the totality of the circumstances present in this case, we cannot say that the trial court's actions resulted in a manifest abuse of discretion. *Id.* at ¶ 43. Accordingly, Ms. Kittle's second assignment of error is overruled.

ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT AMENDED THE INDICTMENT ON THE MORNING OF TRIAL TO EXPAND THE SINGLE DATE DETERMINED BY THE GRAND JURY TO INCLUDE THE ENTIRE PREVIOUS WEEK, IN VIOLATION OF HER CONSTITUTIONAL RIGHTS TO DUE PROCESS AND INDICTMENT BY A GRAND JURY UNDER ARTICLE 1, SECTION 10 OF THE OHIO

CONSTITUTION AND THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION.

**{¶22}** In her third assignment of error, Ms. Kittle argues that the trial court erred by allowing the State to amend the timeframe of the indictment to include the previous week. We disagree.

**{¶23}** "We review a trial court's decision to allow the amendment of an indictment for an abuse of discretion." *State v. Sauto*, 9th Dist. Summit No. 26404, 2013-Ohio-1320, ¶ 10. An abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983). To constitute reversible error, the defendant must show that: (1) the trial court abused its discretion; and (2) the amendment prejudiced her defense. *State v. Dudukovich*, 9th Dist. Lorain No. 05CA008729, 2006-Ohio-1309, ¶ 16.

**{¶24}** Here, the indictment listed the date of the illegal-assembly-or-possession-of-chemicals-for-the-manufacture-of-drugs offense as on or about December 2, 2014 (the date the officers discovered the methamphetamine lab). On the morning of trial, the trial court allowed the State to extend the timeframe of the indictment to include the preceding seven days. Despite allowing the State to amend the indictment, the trial court ultimately determined that the evidence indicated that Ms. Kittle purchased pseudoephedrine on November 30, 2014, that she gave those pills to J.S. so that J.S. could make methamphetamine, and that methamphetamine was made on December 2, 2014. The trial court's journal entry indicates that it found Ms. Kittle guilty based upon the December 2, 2014, date only. Thus, even assuming without deciding that the trial court abused its discretion, Ms. Kittle cannot establish that she suffered prejudice and, consequently, cannot establish reversible error. *Id.* at ¶ 16. Ms. Kittle's third assignment of error is overruled.

III.

{¶25} Ms. Kittle's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

SCHAFER, J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

PAUL M. GRANT, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.