People v Gillette (2019 NY Slip Op 09323)





People v Gillette


2019 NY Slip Op 09323


Decided on December 26, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 26, 2019

110260

[*1]The People of the State of New York, Respondent,
v
Christopher C. Gillette, Appellant.

Calendar Date: November 19, 2019

Before: Egan Jr., J.P., Lynch, Clark and Pritzker, JJ.


Rural Law Center of New York, Castleton (Kelly L. Egan of counsel), for appellant.
Patrick A. Perfetti, District Attorney, Cortland (Elizabeth McGrath of counsel), for respondent.



Clark, J.
Appeal from a judgment of the County Court of Cortland County (Campbell, J.), rendered January 11, 2018, upon a verdict convicting defendant of the crimes of unlawful manufacture of methamphetamine in the third degree, conspiracy in the fifth degree and reckless endangerment in the second degree.
Based upon allegations that he was involved in the production of methamphetamine in an apartment in the City of Cortland, Cortland County, defendant was indicted on charges of criminal possession of a controlled substance in the second degree, unlawful manufacture of methamphetamine in the third degree, conspiracy in the fifth degree and reckless endangerment in the second degree. Following a jury trial, defendant was found not guilty of criminal possession of a controlled substance in the second degree, but was otherwise convicted as charged. Defendant was thereafter sentenced, as a second felony offender, to a prison term of four years, followed by two years of postrelease supervision, on his conviction of unlawful manufacture of methamphetamine in the third degree and to lesser concurrent terms of incarceration on his remaining convictions. Defendant appeals, and we reverse.
We agree with defendant that the trial evidence was not legally sufficient to support his convictions of unlawful manufacture of methamphetamine in the third degree, conspiracy in the fifth degree and reckless endangerment in the second degree. In reviewing the legal sufficiency of the evidence, this Court views the proof in the light most favorable to the People and determines whether there is any "'valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the [charged] crime[s] proved beyond a reasonable doubt'" (People v Acosta, 80 NY2d 665, 672 [1993], quoting People v Steinberg, 79 NY2d 673, 681-682 [1992]).
To convict defendant of unlawful manufacture of methamphetamine in the third degree, as that crime was charged in the indictment, the People were required to prove that defendant possessed, at the same time and location, "[t]wo or more items of laboratory equipment and two or more precursors, chemical reagents or solvents in any combination," with the "intent to use, or knowing that another intends to use[,] each such product to unlawfully manufacture, prepare or produce methamphetamine" (Penal Law § 220.73 [1]). For the conviction of conspiracy in the fifth degree, as that crime was charged in the indictment, the People had to prove that, with intent that conduct constituting a felony be performed, defendant agreed "with one or more persons" to engage in or cause the performance of conduct constituting the felony of unlawful manufacture of methamphetamine in the third degree and that, in furtherance of the conspiracy, at least one of the conspirators committed the overt act of possessing items to cause the performance of the felony conduct (Penal Law § 105.05 [1]; see Penal Law § 105.20; People v Caban, 5 NY3d 143, 149 [2005]). Finally, to establish reckless endangerment in the second degree, the People had to prove that defendant "recklessly engage[d] in conduct which create[d] a substantial risk of serious physical injury to another person" (Penal Law § 120.20).
The trial evidence established that, on the evening of December 9, 2016, members of the City of Cortland Police Department arrived at the apartment in response to a 911 call, wherein the building's owner reported his suspicions of possible criminal conduct based upon his observations, including numerous open windows and the use of a window fan despite the frigid temperature. The responding police officers testified that, upon arrival, they noticed a strong chemical odor consistent with methamphetamine. They testified that, as they approached the apartment, they were greeted by one of the apartment's occupants, Jeffrey Stevens, who was covered in black soot and stated that someone had brought a one-pot methamphetamine lab to the apartment, but that he made that person leave. The officers testified that, based on Stevens' statement and the circumstances, they evacuated the apartment and summoned the fire department. The officers stated that five individuals ultimately exited the apartment — defendant, Stevens, Precious Short, Daniel Gardner and Casey Schunk.
The evidence established that members of the Contaminated Crime Scene Emergency Response Team thereafter conducted a search of the apartment and discovered two active one-pot methamphetamine labs, as well as multiple discarded spent one-pot labs. The team also seized — from various areas of the extremely cluttered and disorganized apartment, including the bedroom, bathroom, kitchen and living room — various laboratory equipment, precursors, chemical reagents and solvents used in the manufacture of methamphetamine, such as isopropyl alcohol, empty cold medicine boxes (at least one of which was a Sudafed box), coffee filters, lithium, lithium batteries, starter fluid, measuring spoons and cups, rubber gloves, salt, drain opener and a dust mask.
Defendant was not found to be in physical possession of any of the seized items. Thus, for the unlawful manufacture of methamphetamine charge, the People had to prove that, with the necessary intent, defendant constructively possessed the requisite items — i.e., two or more items of laboratory equipment and two or more precursors, chemical reagents or solvents in any combination (see Penal Law § 220.73 [1]) — by showing that he "exercised 'dominion or control' over the property by a sufficient level of control over the area in which the contraband [was] found" (People v Manini, 79 NY2d 561, 573 [1992]; see Penal Law § 10.00 [8]; People v Alberts, 161 AD3d 1298, 1300 [2018], lv denied 31 NY3d 1114 [2018]; People v Maricle, 158 AD3d 984, 986 [2018]). In determining whether the People presented legally sufficient proof to establish that defendant constructively possessed the items, we may consider defendant's proximity to the contraband, whether defendant had keys to the apartment, whether the items were in plain view, any evidence that defendant had used the drugs and any witness testimony connecting defendant to the contraband (see People v Durfey, 170 AD3d 1331, 1332 [2019], lv denied 34 NY3d 980 [2019]; People v Maricle, 158 AD3d at 986). Defendant's presence in the same location as contraband or knowledge of the contraband's existence in that location, standing alone, is insufficient to establish constructive possession (see People v Yerian, 163 AD3d 1045, 1047 [2018]; People v Maricle, 158 AD3d at 986).
Upon a review of the record, we find that the evidence fell short of establishing that defendant constructively possessed the requisite items with the necessary intent. The uncontroverted evidence established that defendant did not live in or have keys to the apartment or store any of his personal belongings there (see People v Maricle, 158 AD3d at 986-987). Rather, the evidence demonstrated that the apartment was leased to Stevens and Short, that Schunk had recently been staying in the apartment and that defendant and Gardner had arrived at the apartment, as guests, not long before the police. Stevens, Short and Gardner [FN1] adamantly testified that, although he likely knew what was occurring in the apartment, defendant did not participate in the process of preparing, producing or manufacturing the methamphetamine.[FN2] Stevens and Short each testified that defendant did not use methamphetamine that day, that they had never observed defendant use methamphetamine and that defendant was only in the apartment to try to convince Schunk that she needed to enter a rehabilitation program. Stevens also testified that defendant did not know how to make methamphetamine. Further, the responding officers stated that, unlike their observations of Stevens, they did not observe any black soot, which is indicative of methamphetamine production, on defendant's clothing or hands.
Gardner testified that he was familiar with the process of manufacturing methamphetamine using the one-pot method and that, as soon as he and defendant arrived at the apartment, he joined Stevens in the bathroom to assist with the production, which was already ongoing. Gardner stated that, at the time of his arrival, Stevens was shaking two active one-pots in the bathroom and that, based on his observations, it appeared that Stevens had already ground and added the pseudoephedrine to the one-pot bottles.[FN3] The testimony demonstrated that the production of methamphetamine primarily occurred in the bathroom, but may have moved to the living room — where defendant was — at some point. Stevens testified that defendant arrived with a backpack and that batteries (a reagent) from that backpack went into the bathroom with him and Gardner. Stevens vaguely testified that the backpack contained "lab equipment," but stated that he did not see defendant use anything out of the backpack. The evidence revealed that a backpack was ultimately recovered from the living room and that the backpack contained sea salt, a reagent in the production of methamphetamine, but no "lab equipment."
Viewed in the light most favorable to the People (see People v Tapia, 33 NY3d 257, 270 [2019], cert denied ___ US ___ [Dec. 9, 2019]), the evidence could reasonably support the conclusion that defendant had dominion or control over two reagents — batteries and salt. However, considering the witness testimony and the photographs demonstrating the extremely cluttered state of the living room and apartment overall, the evidence was legally insufficient to establish that defendant "had the ability and intent to exercise dominion or control over" any of the items of lab equipment seized from the apartment, so as to support the conviction for unlawful manufacture of methamphetamine in the third degree (People v Burns, 17 AD3d 709, 711 [2005] [internal quotation marks and citation omitted]; see Penal Law 220.73 [1]; People v Maricle, 158 AD3d at 986-988; cf. People v Yerian, 163 AD3d at 1048-1049). Accordingly, as it was based on legally insufficient evidence, defendant's conviction of unlawful manufacture of methamphetamine in the third degree must be reversed.
Given our determination, and on this record, defendant's convictions for conspiracy in the fifth degree and reckless endangerment in the second degree are also unsupported by legally sufficient evidence and must be reversed as well (see Penal Law §§ 105.05 [1]; 120.20). Consequently, the indictment is dismissed.
Defendant's remaining contentions have been rendered academic by our determination.
Egan Jr., J.P., Lynch and Pritzker, JJ., concur.
ORDERED that the judgment is reversed, on the law, and indictment dismissed.



Footnotes

Footnote 1: The record reveals that Schunk died prior to trial and therefore was unavailable to testify. However, the testimony indicated that she was asleep in the apartment during most, if not all, of the relevant time period.

Footnote 2: The People attempted to impeach Stevens with prior inconsistent statements, which were improperly received into evidence, wherein he stated that defendant had in fact been involved in the production and manufacture of methamphetamine. However, such prior inconsistent statements could be received only for the very limited purpose of impeaching Stevens' credibility and could not be used, as the People incorrectly did, as direct evidence (see CPL 60.35 [2]; People v Berry, 27 NY3d 10, 17 [2016]). Moreover, County Court failed to provide the jury with the required limiting instruction regarding the restricted use of such impeachment evidence (see CPL 60.35 [2]; People v Berry, 27 NY3d at 17). Accordingly, we could not consider the prior inconsistent statements when reviewing the legal sufficiency of the evidence.

Footnote 3: The People attempted to connect defendant to empty pseudoephedrine boxes seized from the apartment by introducing logs from the National Precursor Exchange, a computer database that tracks pseudoephedrine purchases, which showed that defendant had previously purchased Sudafed products containing pseudoephedrine. However, the People failed to lay a proper foundation for the admission of these logs into evidence and, therefore, they were erroneously admitted (see People v Burdick, 72 AD3d 1399, 1401 [2010]; compare State of Ohio v Kittle, 97 NE3d 1240, 1244-1245 [Ohio Ct of App, 9th Dist 2017]). In any event, even if properly admitted, there was no evidence connecting defendant's Sudafed purchases to any of the boxes found in the apartment, particularly since Gardner testified that it appeared that Stevens had added the pseudoephedrine to the one-pots prior to his and defendant's arrival (see People v Yerian, 163 AD3d at 1048).